**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

NAOMI LAYCOCK,

Plaintiff,

v. Case No. 1:23-cv-01050-JCH-JFR

JESSICA VIGIL-RICHARDS,
NICOLETTE GARCIA, HOBERT SHARPTON,
NEW MEXICO CORRECTIONS DEPARTMENT,

Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**THIS MATTER** is before the Court on Defendant Dr. Hobert Sharpton's Motion for Summary Judgment. ECF No. 121 ("Motion"). Sharpton challenges Plaintiff Naomi Laycock's allegations that she was housed in inhumane conditions of confinement and received inadequate medical care while detained at the Western New Mexico Correctional Facility ("WNMCF"). *See* ECF No. 43 at 11-15 ¶¶ 102-134 ("FAC"). In particular, Sharpton, the medical director of WNMCF at the time, argues Laycock has not created a genuine issue of fact as to whether he failed to ensure she received proper medical care and acted with deliberate indifference toward her serious medical conditions. *See* ECF No. 121 at 9-11.

Having considered the parties' briefing, the relevant law, and being otherwise fully informed, the Court will **GRANT** Sharpton's Motion and enter summary judgment in his favor. *See generally id.*

## BACKGROUND[1]

Laycock entered her detention with a documented history of mental illness, self-harm, and attempted suicides. *See* UMFs 7 (listing diagnoses), 8-9, 11, 16. In August 2020, Laycock was held at the Otero County Detention Center ("OCDC"). UMF 9. At the time, Laycock was in the latter stages of a high-risk pregnancy and had fallen into a deteriorating psychotic state. *See* UMFs 7-8, 11. Three months later, in November 2020, Laycock was transferred to the WNMCF as a pretrial county hold. UMF 10. While there, Laycock was housed in the Long Term Care Unit ("LTCU") and J Pod. *See* UMF 15; AMF B. The two units were substantially similar with the primary difference being the thickness of the mattresses. *See* AMFs C, D.

Laycock spent the majority of her detention in the LTCU, which had an infirmary. AMF E; *see* ECF No. 134 at 3-4. There, Laycock was in a "profound psychotic state" and suffered several instances of self-harm and attempted suicide. AMF M; *see* UMFs 8, 11, 15. As a result of those incidents, Laycock was placed on suicide watch. UMFs 15-16.

As the Medical Director of WNMCF, Sharpton spent most of his workday in the medical infirmary in the LTCU. AMF F. Sharpton saw Laycock numerous times during her detention. *See* UMF 13; AMFs F-H, J. Laycock also saw another physician during off-site obstetrician appointments.[2] UMF 14.

---

[1] The Court has determined the relevant facts based on the parties' submissions. The undisputed material facts ("UMFs") and the additional material facts ("AMFs") refer to those portions of facts set forth in the parties' respective briefs that the opposing party did not dispute or failed to refute with supporting evidence. ECF Nos. 121, 134. Laycock largely admits Sharpton's UMFs, ECF No. 121 at 2-4; any disputes are noted where relevant. Where facts are genuinely disputed, the Court views them in the light most favorable to Laycock, as the non-movant. *See In re EpiPen Mktg., Sales Pracs. & Antitrust Litig.*, 44 F.4th 959, 964 (10th Cir. 2022).

[2] The record does not detail when her appointments occurred or who she saw during them. Laycock asserts that the "majority" of her "care was provided outside of WNMCF." ECF No. 134 at 3 ¶ 13.

Laycock sued Defendants almost three years after the events described above.[3] *See* ECF No. 1. In her First Amended Complaint ("FAC"), she alleges: (1) Sharpton alongside Defendants Jessica Vigil-Richards and Nicolette Garcia violated her rights under the Due Process Clause of the Fourteenth Amendment for inhumane conditions of confinement and inadequate medical care; (2) Defendant New Mexico Corrections Department ("NMCD") violated 42 U.S.C. § 12101 of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213; and (3) NMCD violated 29 U.S.C. § 701 of the Rehabilitation Act, 29 U.S.C. §§ 701-796. ECF No. 43 at 11-19. Now, Sharpton seeks summary judgment, arguing Laycock's medical negligence claims are unsupported.[4] ECF No. 121 at 4-9. He also posits Laycock failed to establish his deliberate indifference to her medical care because he did not have the requisite, culpable mental state. *Id.* at 10.

## LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A disputed fact is 'material' if it might affect the outcome of the suit under the governing law, and the dispute is

---

[3] Laycock originally also sued Laura Sedillo and Garcia. ECF No. 43 at 1. Laycock voluntarily dismissed her claim against Sedillo. ECF No. 96. Later, she moved for default judgment against Garcia as a sanction under Rule 37(b) of the Federal Rules of Civil Procedure. *See* ECF No. 147. The Court granted that motion. *See* ECF No. 148.

[4] "Sharpton spends the majority of his argument asserting that he is 'entitled to summary judgment on plaintiff's medical negligence claims . . . However, [Laycock] does not bring medical negligence claims against . . . Sharpton." ECF No. 134 at 10 n.2. Laycock is correct. Her cause of action for inadequate medical care sounds in constitutional law under the Eighth and Fourteenth Amendments to the Constitution, not state law.

A claim for medical negligence is separate and distinct from a Fourteenth Amendment claim for inadequate medical care, particularly because medical negligence claims are based in state law, not federal law. *See Blea v. Fields*, 2005-NMSC-029, ¶ 21, 138 N.M. 348, 120 P.3d 430 (outlining the elements of a claim for medical negligence). Consequently, the Court focuses exclusively on whether Sharpton is entitled to summary judgment on Laycock's Fourteenth Amendment claim under federal law. *See* ECF No. 43 at 11 ("Violation of Fourteenth Amendment Inhumane Conditions of Confinement and Inadequate Medical Care").

'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Est. of Beauford v. Mesa Cnty., Colo.*, 35 F.4th 1248, 1261 (10th Cir. 2022) (citation modified). "The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact, but once the moving party has done so, the burden shifts to the non-movant to establish a genuine issue of fact." *Georgelas v. Desert Hill Ventures, Inc.*, 45 F.4th 1193, 1197 (10th Cir. 2022). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002) (citation modified). In opposing summary judgment, the non-movant cannot rest on mere allegations "but must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (citation modified). When conducting this inquiry, the Court construes "the facts in the light most favorable to Laycock" and will "draw all reasonable inferences in [her] favor." *Beauford*, 35 F.4th at 1261.

**DISCUSSION**

The Eighth Amendment to the United States Constitution prohibits the use of "cruel and unusual punishment" on convicted inmates. U.S. Const. Amend. VIII; *see Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (holding "only the unnecessary and wanton infliction of pain" implicates the Eighth Amendment). The Eighth Amendment, and related precedent, applies to the states via the Fourteenth Amendment. *Wilson v. Seiter*, 501 U.S. 294, 296 (1991). Meaning, pretrial detainees and convicted inmates are entitled to the same minimum standards of care during their incarceration. *See Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1315 (10th Cir. 2002) (noting courts

apply "an analysis identical to that applied in Eighth Amendment cases brought pursuant to [42 U.S.C.] § 1983"). The requisite minimum standards of care include "humane conditions of confinement," "adequate food, clothing, shelter, and medical care," and that prison officials "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

Prison officials violate the Eighth Amendment's ban on cruel and unusual punishment if their "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 104 (text only). The denial of proper psychological care may also violate the Eighth Amendment. *See Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996) ("The states have a constitutional duty to provide necessary medical care to their inmates, including psychological or psychiatric care."); *Bee v. Greaves*, 744 F.2d 1387, 1395 (10th Cir. 1984) ("[T]he jail is under a constitutional duty to treat the medical needs of pretrial detainees, and such treatment includes mental as well as physical disorders." (citation modified)). To "state a cognizable claim," Laycock "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 105. "[A]n inadvertent failure to provide adequate medical care" is not enough. *Id.* Also, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Id.* at 106.

The Court evaluates Laycock's Fourteenth Amendment medical care claim under the two-part "deliberate indifference test." *Perkins v. Kan. Dep't. of Corr.*, 165 F.3d 803, 809 (10th Cir. 1999); *see Estelle*, 429 U.S. at 102. To satisfy the first prong—the objective component—Laycock must demonstrate that her medical need, and any related harm, was "objectively, 'sufficiently serious'" to be cognizable under the Cruel and Unusual Punishment Clause. *Farmer*, 511 U.S. at

834. As to the second prong—a subjective assessment—Laycock must prove Sharpton had a "sufficiently culpable state of mind" such that he knew of an "excessive risk to inmate health or safety" and took no measure to abate it. *Id.* Sharpton denies Laycock's allegations of inadequate medical care, arguing she cannot satisfy the second half of the deliberate indifference test. ECF No. 121 at 10-11.

## I. Laycock's medical needs were sufficiently serious.

A detainee's "medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Horton v. Ward*, 123 F. App'x. 368, 371 (10th Cir. 2005) (text only). It is undisputed Laycock had "sufficiently serious" medical conditions and required care for them. ECF No. 121 at 10-11; ECF No. 139 at 7. Specifically, the parties agree that during her detention, Laycock was pregnant and had ongoing mental health diagnoses. *See* UMFs 7-8, 11; AMF M. The objective prong is met.

## II. Sharpton was not deliberately indifferent to Laycock's health or safety.

To satisfy the subjective portion of the deliberate indifference test, Laycock must show that Sharpton was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also [have] draw[n] the inference." *Farmer*, 511 U.S. at 837. To make this showing, Laycock may demonstrate Sharpton (1) failed to treat her serious medical conditions properly, (2) delayed in providing her medical treatment that "caused either unnecessary pain or a worsening of her condition," *Mata v. Saiz*, 427 F.3d 745, 755 (10th Cir. 2005); or (3) acted as a gatekeeper who prevented her from receiving treatment or denied access to someone capable of evaluating her needs. *Sealock*, 218 F.3d at 1211. "Even a brief delay may be unconstitutional." *Mata*, 427 F.3d at 755. "[T]he existence of [a defendant's] subjective state

of mind" may be inferred "from the fact that the risk of harm is obvious." *Hope v. Pelzer*, 536 U.S. 730, 738 (2002).

The undisputed record shows Sharpton knew Laycock had a high-risk pregnancy and was in the midst of a mental health crisis. AMFs G-H. Sharpton worked in the medical unit within the LTCU and saw Laycock regularly for medical appointments, including prenatal care. UMFs 13-14; AMFs F, J. Evidence of his medical care alone demonstrates that Sharpton was not deliberately indifferent to Laycock's medical needs. *See Buchanan v. Elliott*, No. CIV 19-029, 2021 WL 1206405, at *7 (E.D. Okla. Mar. 30, 2021) ("Where there is such evidence of a 'series of sick calls, examinations, diagnoses, and medication . . . it cannot be said there was a "deliberate indifference" to the prisoner's complaints.'" (quoting *Smart v. Villar*, 547 F.2d 112, 114 (10th Cir. 1976)). Beyond providing Laycock with care, Sharpton did not impede or delay Laycock receiving treatment from other medical professionals at WNMCF or off-site. For instance, when Laycock was placed on suicide watch following her instances of self-harm, Sharpton did not impede that specialized form of treatment. *See* UMFs 11, 15-16. Additionally, when Laycock was transported to off-site medical appointments for prenatal care, Sharpton neither postponed nor prevented Laycock from attending those visits. *See* UMF 14. Thus, the material facts establish both that Sharpton provided Laycock with regular and responsive medical attention and her care by other medical professionals was uninhibited. Meaning, "the requisite state of mind cannot be met" under the subjective prong as "long as a medical professional provides a level of care consistent with the symptoms presented by the inmate, absent evidence of actual knowledge or recklessness." *Mata*, 427 F.3d at 753.

Moreover, Laycock claims Sharpton's quality care was constitutionally deficient because he allowed her to be "primarily housed in the LTCU" where a jury could infer he knew those

conditions were "dangerous and inadequate." ECF No. 134 at 13; *see id.* at 4 n.1, 10, 12. Laycock cites no evidence, besides two photographs, to describe the housing conditions in either the LTCU or J Pod. This lack of evidence, combined with Laycock's conclusory allegations, does not amount to proof from which a jury could reasonably conclude Sharpton knew Laycock's placement in the LTCU presented a substantial risk to Laycock's health and safety.[5] *See, e.g.*, *Beauford*, 35 F.4th at 1272 ("[T]he Estate advances conclusory assertions but points to no evidence from which a jury could reasonably infer [the defendant] knew that a single-cell housing placement presented a substantial risk to [the decedent's] health and safety."). It is Laycock's responsibility, in opposing the Motion, to prove these allegations. *See Cardoso v. Calbone*, 490 F.3d 1194, 1197 (10th Cir. 2007) ("For dispositive issues on which the plaintiff will bear the burden of proof . . ., [s]he must go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to [her] case in order to survive summary judgment." (citation modified)). She has not done so. And any claim that Sharpton should have placed Laycock in a different housing unit does not render his medical care unconstitutional. There is no evidence that Sharpton had the authority to recommend or change Laycock's housing assignment. Further, were the decision to house Laycock in the LTCU or J Pod to be considered a medical decision, there is no evidence that Sharpton knew her placements in those units contributed to her deterioration.

[5] Laycock provides the Expert Report of Dr. Zachary Rosner for support. In particular, Laycock cites the Expert Report to support her speculations that "Sharpton *would have known* that Plaintiff was being held in solitary confinement . . . and that this made it *much less likely* that Plaintiff would receive adequate care for her pregnancy and psychosis." AMF T (emphasis added). While the Expert Report details, inter alia, Rosner's opinions on Laycock's various medical appointments, her labor and delivery, and patient safety during pregnancy, it does not indicate Sharpton was deliberately indifferent to Laycock's care or had the power to alter her housing placement. *See* ECF No. 134-1 at 3-7; *see, e.g.*, *Beauford*, 35 F.4th at 1272 n.18 (Citing its experts, the Estate maintains that, as a general matter, housing an individual with medical and mental health conditions in solitary confinement is inappropriate . . . A reasonable jury could not infer from such generalized assertions that [the defendant] acted with deliberate indifference in this case.").

"[T]he subjective component is not satisfied, absent an extraordinary degree of neglect, where a doctor merely exercises his considered medical judgment." *Self v. Crum*, 439 F.3d 1227, 1232 (10th Cir. 2006) (summarizing cases).

Lastly, even assuming Sharpton had the requisite knowledge and the authority to change Laycock's housing, her arguments about the same amount to a difference of opinion between inmate and medical provider. These kind of assertions are proscribed by precedent that states "a difference of opinion [between inmate and prison doctor] does not support a claim of cruel and unusual punishment." *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993); *see, e.g.*, *Estelle*, 429 U.S. at 104-06 (explaining how matters of medical judgment do not give rise to a claim of cruel and unusual punishment); *Perkins*, 165 F.3d at 811 ("[A] prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation."). Thus, there is no indication Sharpton exhibited an extraordinary degree of neglect satisfactory of the subjective prong of the deliberate indifference test.

In sum, "to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Estelle*, 429 U.S. at 106 (citation modified). Here, Laycock has not created a genuine issue of material fact as to Sharpton's deliberate indifference. Therefore, the Court will enter summary judgment in Sharpton's favor as to Laycock's cause of action under the Fourteenth Amendment.

## CONCLUSION

Laycock has satisfied only one half of the deliberate indifference inquiry: that she had "sufficiently serious" medical needs while detained at WNMCF. *See Farmer*, 511 U.S. at 834. In contrast, she has not created an issue of fact as to Sharpton's deliberate indifference to her medical

conditions and medical care. Therefore, Sharpton is entitled to summary judgment on Laycock's Fourteenth Amendment claim for inadequate medical care and inhumane conditions of confinement.

It is hereby ordered that Defendant Dr. Hobert Sharpton's Motion for Summary Judgment, ECF No. 121, is **GRANTED**. Laycock's claim under the Fourteenth Amendment against Sharpton is **DISMISSED with prejudice**.

SENIOR UNITED STATES DISTRICT JUDGE